UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARIO CAVIN,

    Plaintiff,

v.                                                Case No.  2:15-cv-44
                                              HON. ROBERT HOLMES BELL

DANIEL HEYNS, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

        Plaintiff prisoner Mario Cavin, filed this *pro se* civil rights action pursuant to 42 U.S.C. §§ 1983 and 2000cc-1 *et seq.* against Defendants Daniel Heyns and Jeffrey Woods, seeking damages and declaratory relief for denial of his religious liberties in violation of the First and Fourteenth Amendments. Defendant Heyns is a former Director of the Michigan Department of Corrections (MDOC) who instituted the MDOC policies relevant to Plaintiff's complaint. Defendant Woods serves as Warden of the Chippewa Correctional Facility (URF), where Plaintiff was housed at the time of the alleged events.

        Plaintiff is a prisoner within the MDOC system. He has self-identified as a Wiccan since about 2005 or 2006. PageID.301, ECF No. 66-2. Between August of 2013 and December of 2014, Plaintiff was an inmate at URF. PageID.300, ECF No. 66-2. Plaintiff was placed on "toplock" status as the result of a Class I Misconduct for having dangerous contraband, which means that he was confined to his cell with some exceptions. PageID.303, ECF 66-2. While on toplock,

Plaintiff missed two sabbat group services of the Wiccan religion in June and September of 2014.

PageID.302, ECF No. 66-2.

> During Plaintiff's January 2015 deposition, the following exchange took place:
>
> Q.  When you were at Chippewa and on toplock for these two services in June and in September, did anyone block you from participating on your own in your faith?
>
> A.  I actually was not that aware of what needed to be done on my own to do it.  I had like a book and I believe like a study guide that gave me the basics of Wiccan but not enough to really tell me what I needed to do for these particular sabbats.  So nobody really came and said, hey, you can't do it, but I didn't know what I was doing, and then being on toplock I didn't have an opportunity to talk to any of the other Wiccans in the unit so I couldn't seek their guidance either.
>
> . . .
>
> Q.  When you were on toplock were you prohibited from possessing certain items that you would use during those services?
>
> A.  Yes.
>
> Q.  What would those - - what were you not allowed to have?
>
> A.  We're not allowed to have candles.  We're not allowed to have incense, any form of prayer oils, our athame the ritual dagger.  Let's see, I think there's - - well, any type of metal caldrons or chalice that - - you know, ceremonial representations, we're not allowed to have those.  We can have them at service but we're not allowed to have them outside of service period, so, yeah, I was kind of lost.

Plaintiff's Deposition, PageID.304, ECF No. 66-2.

MDOC's Policy Directive regarding religious beliefs and practices mandates that, "[e]xcept in [the Special Alternative Incarceration Program (SAI)], prisoners shall be permitted to observe religious fasts and feasts that are necessary to the practice of their religion, as approved by the [Correctional Facilities Administration's] Special Activities Coordinator and set forth in the Handbook for Religious Groups."  PD 05.03.150, ¶ VV (effective 07/26/13).  Attachment A to this

Directive lists the religious groups recognized by the MDOC that are authorized to conduct group religious services, including Plaintiff's religion, Wicca. The Attachment also notes regarding Wicca: "Group services only authorized for eight annual Sabbats." PD 05.03.150A at 3.

MDOC's Policy Directive regarding prisoner discipline shows that up to 30 days of toplock can be imposed as a sanction for a Class I Misconduct like the one committed by Plaintiff. However, up to five days of toplock may be imposed on "the most serious or persistent violators" found guilty of Class II or III Misconduct, including bribery of an employee, destruction of property, gambling, forgery, contraband, excessive noise, horseplay, and violation of posted rules. PD 03.03.105B-C (effective 04/09/2012) and PD 03.03.105D (04/11/2014). The relevant portion of the Directive provides: "Prisoners shall be released from toplock for regular showers, visits, medical care (including individual and group therapy), school, and law library. The Warden or designee <u>may</u> authorize prisoners on toplock to go to the dining room, work assignments, and/or other specified activities, including group religious services." PD 03.03.105, ¶ OOO (effective 04/09/2012). PageID.318, ECF No. 66-3.

Pursuant to this section, Co-Defendant Woods issued a URF Operating Procedure regarding toplock. This Procedure provides that "[p]risoners on Top Lock may attend Law library on a Top Lock Law Library Call Out. Prisoners are not allowed to attend religious services or work assignments." OP URF 03.03.105B (effective 06/23/2012). PageID.323, ECF No. 66-4.

Currently before the Court is Defendants' motion for summary judgment filed pursuant to Fed. R. Civ. P. 56(a). PageID.282-283, ECF 65. In their briefs in support of this motion and in reply to Plaintiff's response, Defendants argue that (a) Plaintiff's request for declaratory relief under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, is moot because Plaintiff transferred to a different prison; (b) Co-Defendant Heyns should be granted

qualified immunity against Plaintiff's First and Fourteenth Amendment claims because Heyns lacked the requisite personal involvement; (c) Defendants should be granted qualified immunity on Plaintiff's First Amendment claim because they acted reasonably in light of clearly established law; (d) Plaintiff's claim under the Fourteenth Amendment should be dismissed because the First Amendment offers an explicit source of constitutional protection for his religious rights; and (e) Defendants should be granted qualified immunity regarding Plaintiff's due process claim under the Fourteenth Amendment because he has not shown that he suffered with an atypical and significant hardship by missing two religious services while on "toplock."  PageID.284-295, ECF No. 66; PageID.358-363, ECF No. 70.

In response, Plaintiff contends that (a) Heyns should not be granted qualified immunity because he was personally involved in the violation of Plaintiff's rights because he instituted the policy that resulted in the violation of Plaintiff's religious rights; (b) Defendants should not be granted qualified immunity because they acted unreasonably and against clearly established law; (c) his Fourteenth-Amendment claim should not be dismissed because, while the First Amendment is his primary source of constitutional protection, it is not the sole source; (d) Defendants should not be granted qualified immunity because Plaintiff's claim under the Fourteenth Amendment is a claim of substantive due process.  PageID.333-340, ECF No. 68.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The

nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that Plaintiff's request for injunctive relief is moot because Plaintiff is no longer housed at the Chippewa Correctional Facility. The Sixth Circuit determined that when a prisoner, seeking a declaratory judgment against a prison, is no longer housed in that institution, the prisoner's claims against *that institution* have become moot. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). *See Colvin v. Caruso*, 605 F.3d 282, 289 (6 Cir. 2010) (holding a Michigan prisoner's request for declaratory and injunctive relief was moot after he was transferred to another prison facility because the prisoner directed his request for relief specifically at the policies of the facility housing him previously, not at an MDOC policy).

Underlying the court's brief determination is the constitutional and statutory requirement that federal courts only adjudicate cases of "actual controversy." U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 2201. According to the Supreme Court, the question is "whether the facts

alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.*" *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  When considering the mootness of a request for declaratory judgment, the Court has considered factors such as whether there was a "mere voluntary cessation of allegedly illegal conduct," whether the defendant was left "free to return to his old ways," or whether there was a "reasonable expectation that the wrong will be repeated." *Preiser*, 422 U.S. at 402.

   Plaintiff's request for a declaratory judgment against Defendant Woods and Chippewa Correctional Facility is moot under *Kensu* due to his transfer.  However, since Plaintiff asserts that the underlying MDOC policy directive Heyns instituted (PD 03.03.105), violated his rights, that claim is not moot by his transfer to a different MDOC prison.  Plaintiff claims that this directive "authorized Defendant Woods to deprive Cavin of his religious services while on toplock," which "directly resulted in Cavin's constitutional injury."  PageID.334, ECF No. 68.  *See also* Plaintiff's original Complaint, ¶ 15, complaining under the heading "Violation of RLUIPA" that "Defendant Heyns has actively participated in, or knowingly condoned this substantial burden on Mr. Cavin's religious exercise."  PageID.4, ECF No. 1.

   PD 03.03.105 is still in effect.  Plaintiff is still imprisoned in the MDOC system and is thus still subject to this Policy Directive, giving wardens the unguided discretion to deny prisoners on toplock access to group religious services.  Given that MDOC's discretionary policy is still in effect and given that URF's blanket-ban policy has not been repealed, there is no assurance that another MDOC facility housing Plaintiff, including his current institution, might not at some point adopt URF's blanket ban.

However, Plaintiff's claim is not "ripe" for adjudication at this time because the legal conflict contemplated by Plaintiff is too remote to be an "actual controversy" under Art. III of the constitution or 28 U.S.C. § 2201. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (holding that "[a]llegations of possible future injury do not satisfy the requirements of Art. III" of the constitution and that a "threatened injury must be 'certainly impending' to constitute injury in fact"), *Sankyo Corp. v. Nakamura Trading Corp.*, 139 F. App'x 648, 651-52 (6th Cir. 2005), and *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville &Davidson Cty., Tenn.*, 274 F.3d 377, 399 (6th Cir. 2001) (explaining that the doctrine of ripeness "exists to ensure that courts decide only existing, substantial controversies, *not hypothetical questions or possibilities*" (internal quotation marks omitted, emphasis added)). Accordingly, it is recommended that Plaintiff's request for declaratory relief be denied.

Defendants move for qualified immunity on Plaintiff's claims. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.*

Defendants argue that Plaintiff's right to attend religious services while on toplock was not clearly established in 2014. PageID.290, 293, ECF No. 66; PageID.361, ECF No. 70. Plaintiff contends that (a) prisoners on toplock "may not automatically be excluded from religious services" and (b) this right was clearly established by 2014. PageID.335, ECF No. 68. To corroborate his claim, Plaintiff cites a number of opinions from the Second Circuit in reliance on *Sutton v. Metro. Gov't of Nashville & Davidson Cty.*, 700 F.3d 865, 876 (6th Cir. 2012) (holding that the "source of law that clearly establishes such a right is 'precedent from the Supreme Court, the Sixth Circuit, the district court itself, *or other circuits that is directly on point*'") (emphasis added, citation omitted).[1] Plaintiff cites cases holding that prisoners on a status equivalent to toplock may not be excluded from religious services unless there exists a legitimate penological justification. *See,*

---

[1] Plaintiff's reliance on *Sutton* to justify his exclusive citing of persuasive authority is misplaced. The Sixth Circuit has explained in greater detail what is required in a qualified immunity analysis. *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171 (6th Cir. 1988). There the court stated regarding the use of persuasive authority in the context of qualified immunity cases that "[i]n an extraordinary case, . . . these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting. Here a mere handful of decisions of other circuit and district courts, which are admittedly novel, cannot form the basis for a clearly established constitutional right in this circuit." *Id.* at 1177-78. *See, e.g., Cagle v. Gilley*, 957 F.2d 1347, 1348 (6th Cir. 1992) (quoting *Seiter*), *Mumford v. Zieba*, 4 F.3d 429, 432-33 (6th Cir. 1993) (quoting *Seiter* and *Cagle*), and *Cameron v. Seitz*, 38 F.3d 264, 272-73 (6th Cir. 1994) (summarizing *Mumford* as "the decisions from other circuits must be clear and directly on point"). *See also Turner v. City of Taylor*, 412 F.3d 629, 640 (6th Cir. 2005) (summarizing *Cagle* as "we look primarily to decisions of the Supreme Court, this court, and other courts within our circuit").

*e.g., Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) (finding it "well established that a prisoner's free exercise right to participate in religious services is not extinguished by his or her confinement in special housing or keeplock . . . absent a legitimate penological justification"). *See also Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006), *Beck v. Lynaugh*, 842 F.2d 759, 761 (5th Cir. 1988), and *Alston v. DeBruyn*, 13 F.3d 1036, 1040 (7th Cir. 1994).

The Sixth Circuit has upheld blanket bans on attending religious services for inmates in administrative segregation. *Walker v. Mintzes*, 771 F.2d 920 (6th Cir. 1985). In *Walker* the Sixth Circuit upheld a prison-wide ban on group religious activities for six months after a riot in a Michigan prison. The Court stated that "when prison officials offer evidence that security concerns prevent them from providing congregate religious services to inmates in administrative segregation, the deprivation is not violative of the first amendment so long as the inmates' rights of conscience are not infringed and they can request individual religious counseling." *Id.* at 930 (citing *McDonald v. Hall*, 579 F.2d 120, 121 (1st Cir. 1978) and *Sweet v. South Carolina Dep't of Corrections*, 529 F.2d 854, 863 (4th Cir. 1975). *See also Cook v. Campbell*, No. 98-5202, 1999 WL 183316, at *1 (6th Cir. Mar. 16, 1999), *McElhaney v. Elo*, No. 98-1832, 2000 WL 32036, at *5 (6th Cir. Jan. 6, 2000), *Lekas v. Briley*, 405 F.3d 602, 611-12 (7th Cir. 2005), and *Kaufman v. McCaughtry*, 419 F.3d 678, 682-83 (7th Cir. 2005).[2]

---

[2] 2 Michael B. Mushlin, *Rights of Prisoners* § 7:27 (4th ed.) summarizes the current case law on this "highly controversial question:" "In cases dealing with access to religious services for inmates who have been placed in disciplinary segregation as punishment for having committed prison offenses, *courts have reached mixed conclusions*. Some courts have upheld a blanket refusal to permit any inmates held in these units to attend services. These cases have tended to rely on the fact that prison officials have made optional methods of practicing religion available to inmates in segregation. However, the better reasoned decisions hold that a universal denial of attendance at religious services to all inmates in punitive segregation, without any individual consideration of the security dangers of each inmate, is unconstitutional" (emphasis added).

In *Walker*, the Sixth Circuit stated that "the state cannot merely assert that its interests require restrictions on prisoners' exercise of their first amendment rights. It must prove the necessity of any restrictions it imposes, and it must demonstrate that 'the prison's restriction was a reasonable time, place, and manner restriction of a First Amendment right.'" *Walker*, 771 F.2d at 929 (quoting *Weaver v. Jago*, 675 F.2d 116, 119 (6 Cir. 1982)). *See also Bell v. Wolfish*, 441 U.S. 520, 546 (1979) (holding that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights" of prisoners).

The reasonableness of a restrictive prison regulation must be evaluated based on the four factors articulated by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *Colvin*, 605 F.3d at 293.

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. If not, the regulation is unconstitutional, and the other factors do not matter. Unlike the first factor, the remaining factors are considerations that must be balanced together: (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimus [sic] cost to valid penological interests.

*Id.* (quoting *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999)).

Addressing the first *Turner* factor, Defendants assert in their brief that "there is a reasonable basis to restrict prisoners' access to group services while they are on disciplinary sanction." PageID.292, ECF No. 66. Their position is that "MDOC can withhold certain privileges to ensure that prisoners like Cavin behave themselves in the future." PageID.292-293, ECF No. 66.

Plaintiff argues that the blanket ban issued by Woods serves punitive purposes. He also alleges that categorically excluding him from group religious services while on toplock is arbitrary when the applicable URF regulation allows him to go to the law library and to school while on toplock. PageID.336-337, ECF No. 68. However, the Supreme Court held that "providing increased incentives for better prison behavior" is a valid penological interest justifying the restriction of First Amendment rights. *Beard v. Banks*, 548 U.S. 521, 530-31 (2006). In the opinion of the undersigned, Plaintiff fails to produce any evidence undermining Defendants' consistent contention that the blanket ban on attendance of religious groups services was established for legitimate government purposes in managing prisons.

The second *Turner* factor asks whether there were alternative means of exercising the right that remained open to the prisoner. It is undisputed that Plaintiff did not have access to religious group meetings while on toplock. It is also undisputed that Plaintiff was not categorically prohibited from practicing his religion individually while on toplock. However, Plaintiff contends that he was unable to do so due to his ignorance of, and lack of "requisite materials" for, "solitary rituals" without stating specifically what these might have been.[3] PageID.337, ECF No. 68. Defendants challenge this contention, stating that Plaintiff's claim of ignorance as to the individual parts of his religion "is highly dubious." PageID.293, ECF No. 66. However, even granting Plaintiff's contention that he lacked any viable alternatives to religious group activities, the lack of alternatives is not "conclusive." *Banks*, 548 U.S. at 532.

The third *Turner* factor inquires into the impact accommodating the asserted constitutional right will have on guards, inmates, and prison resources in general. Defendants

---

[3] Cf. the cautionary remark in Scott Cunningham, *Wicca: A Guide for the Solitary Practitioner* 4 (2004): "At present, Wicca is a religion with many variations."

concede that this impact would only be "a mild one." PageID.293, ECF No. 66. The fourth *Turner* factor looks for ready alternatives that fully accommodate Plaintiff's rights with only a minimal impact on valid penological interests. As stated by Defendants, the valid penological interest in Plaintiff's case was to provide incentives for Plaintiff to conform his behavior to prison rules by withholding privileges such as participation in group religious activities. This interest would be defeated if the privilege of group services was granted to Plaintiff. Moreover, Plaintiff could practice Wicca solitarily. In the opinion of the undersigned, this factor weighs in favor of the policy. Therefore, in the opinion of the undersigned, given that Defendants satisfied the first Turner factor and that the three remaining factors, on balance, support the reasonableness of the policy, Defendants Heyns and Woods are entitled to the defense of qualified immunity.

Plaintiff's Fourteenth Amendment claim "is premised on violations of substantive due process." PageID.339, ECF No. 68. The Supreme Court stated that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). *See Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) and *O'Brien v. Mich. Dept. of Corr.*, 592 F. App'x 338, 344 (6th Cir. 2014) (holding, under *Albright*, that where the Eighth Amendment provides "substantive protection," substantive due process claims may properly be dismissed). In the opinion of the undersigned, Plaintiff's substantive due process claims are more appropriately analyzed under the First Amendment.

Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 65) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:   July 8, 2016                                     /s/ Timothy P. Greeley
                                                         TIMOTHY P. GREELEY
                                                         UNITED STATES MAGISTRATE JUDGE