UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARIO CAVIN,

       Plaintiff,                        Case No.  2:15-cv-44

v.

                                        HON. ROBERT HOLMES BELL

DANIEL HEYNS et al.,

       Defendants.
_____/

## ORDER APPROVING AND ADOPTING
## REPORT AND RECOMMENDATION

On July 8, 2016, Magistrate Judge Timothy P. Greeley issued a Report and Recommendation ("R&R") recommending that the Court grant Defendants' motion for summary judgment. (ECF No. 71.) Plaintiff has filed objections to the R&R. (ECF No. 75.)

This Court is required to make a *de novo* review of those portions of a R&R to which specific objections are made, and may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**Mootness**

Plaintiff objects to the Magistrate Judge's determination that his claim for injunctive and declaratory relief is moot as it pertains to the warden of Chippewa Correctional Facility (URF), Defendant Woods, because Plaintiff has been transferred to a different facility. Plaintiff argues that his claim is not moot because he could be transferred back to URF at any time, and is likely to be transferred there again at some point during his remaining sentence.

Plaintiff's claim is directed toward a URF policy that prevents prisoners from attending religious services while they are confined in "toplock." (R&R at 3.) Plaintiff contends that this policy prevented him from attending two group services of the Wicca religion when he was confined in toplock.

The Court discerns no error in the determination of the Magistrate Judge. The fact that Plaintiff may be transferred back to URF at some unknown time in the future does not present "sufficient immediacy and reality" to sustain his claim. *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975). This is especially true considering that Plaintiff is only affected by the policy when he is confined in toplock. At all other times, the policy has no impact. Even if Plaintiff was transferred back to URF today, his claim would still be moot unless he is placed in toplock. *See Selby v. Caruso*, 734 F.3d 554, 561 (6th Cir. 2013) (finding that prisoner's RLUIPA claim challenging restrictions on attending group services for prisoners confined in administrative segregation became moot when the prisoner was released into the general population).

"There is . . . an exception to the mootness doctrine for claims that are capable of repetition, yet evade review." *Fredette v. Hemingway*, 65 F. App'x 929, 931 (6th Cir. 2003). This exception requires that "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration" and that "there was a reasonable expectation that the *same* complaining party would be subjected to the same action again." *Id.* (emphasis in original; internal quotation marks and citation omitted). This exception does not apply because Plaintiff has not shown that there is a reasonable expectation that he will be

transferred back to URF, placed in toplock, and prevented from attending the group services for his faith. It is not enough for him to speculate that he might be transferred back to URF someday. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (an allegation of a likelihood of transfer back to the same facility is not enough to satisfy the capable-of-repetition exception to mootness).

### **Ripeness**

Next, Plaintiff objects to the Magistrate Judge's determination that his claim concerning Michigan Department of Corrections (MDOC) Policy Directive 03.03.105 is not ripe. The policy provides that the warden of a facility "may" provide authorization for prisoners confined in toplock to attend out-of-cell activities, including group worship services. MDOC Policy Directive 03.03.105 ¶ OOO (Apr. 9, 2012). The Court agrees with the R&R that any possible injury to Plaintiff arising from this policy directive is too remote to give rise to a claim. Plaintiff does not contend that he is presently confined in toplock or that prisoners at his current facility are prevented from attending group worship services. Plaintiff contends that his claim concerns a dispute that is "likely to reoccur," because other wardens are likely to use the MDOC policy as an opportunity impose restrictions like those at URF. (Objections at 3, ECF No. 75.) This is mere speculation.

Plaintiff also contends that if the Court does not permit his claim to proceed, then the MDOC could protect itself from liability by relying on the defenses of res judicata or equitable estoppel. That is not the case. Dismissing Plaintiff's claim as unripe does not mean that challenged policies are valid; rather, it means that the prospect of a legal conflict is too

3

remote to be resolved at this time. Another prisoner, or even Plaintiff himself, facing an inability to attend group services would not be barred by res judicata or equitable estoppel from proceeding on similar claims.

**Qualified Immunity**

Plaintiff contends that the R&R erred in granting qualified immunity when it failed to consider the "novelty" aspect of the qualified-immunity analysis. (*Id.*) In other words, for a right to be clearly established, "[a] court need not have previously held illegal the conduct in the precise situation at issue because 'officials can still be on notice that their conduct violates established law even in *novel* factual circumstances.'" *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 876 (6th Cir. 2012) (quoting *Sample v. Bailey*, 409 F.3d 689, 699 (6th Cir. 2005)) (emphasis added).

There are two prongs to the qualified-immunity analysis. The first is whether the facts alleged or shown make out a constitutional violation, and the second is whether the right that was violated was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If one or both of these prongs is not met, then the defendant is entitled to qualified immunity. The R&R appears to have rested its decision primarily on the first prong. Plaintiff's objection goes to the second prong. Thus, even if Plaintiff is correct, his objection would not change the outcome of the case.

In any event, the Court discerns no error in the conclusion that it is not clearly established that restricting access to group religious activities for prisoners on top lock is a First Amendment violation. In order to prevail, Plaintiff must show that the balancing of the

factors in *Turner v. Safley*, 482 U.S. 78 (1987) clearly established that a policy like the one at URF is unreasonable. *See Iswed v. Caruso*, 573 F. App'x 485, 490 (6th Cir. 2014). Plaintiff cites persuasive authority from the Second Circuit, none of which compels the conclusion that the URF policy violated his constitutional rights. In *Ford v. McGinnis*, 352 F.3d 582 (2d Cir. 2003), the first case cited by Plaintiff, the prisoner alleged that prison officials were not serving religious meals to prisoners in segregation. Rather than decide the First Amendment claim and the issue of qualified immunity, however, the court remanded the matter to resolve factual disputes. *Id.* at 538. Similarly, in *Salahuddin v. Coughlin*, 993 F.2d 306 (2d Cir. 1993), the court recognized that confinement in keeplock does not deprive prisoners of the right to participate in group religious services, but it remanded the matter for further development of the record as to whether the defendants' actions were reasonable. *Id.* at 310. Finally, in *Mawhinney v. Henderson*, 542 F.2d 1 (2d Cir. 1976), the court merely held that an allegation that prisoners in punitive segregation and "keeplock" are denied participation in chapel services was sufficient to state a claim. *Id.* at 3. The court then remanded the matter for further factual development and a determination of the reasonableness of the defendants' actions. *Id.* Thus, even assuming that the foregoing cases are factually applicable, none of them actually held that the defendants' conduct violated the First Amendment.

     Plaintiff also raises an objection regarding the first prong of the analysis. He contends that he has shown a constitutional violation because the ban on group religious services for prisoners in toplock is not based on any "security justifications." (Objections at 4.) As the

R&R discussed, however, the relevant question is whether the policy was supported by a valid *penological interest* justifying the temporary restriction on Plaintiff's First Amendment rights. Security concerns are just one example of a penological interest. The R&R cited another: the need for an incentive for better behavior. Thus, Plaintiff's objection is without merit.

### RLUIPA

Plaintiff further contends that Defendants are not entitled to qualified immunity with respect to his RLUIPA claim. The R&R did not make a finding of qualified immunity regarding this claim. Rather, it determined that this claim is moot as it pertains to Defendant Woods and not ripe as it pertains to Defendant Heyns.

### First Amendment

Plaintiff offers several other objections to the R&R's determination that Plaintiff does not state a constitutional violation. Plaintiff claims that a decision cited in the R&R, *Walker v. Mintzes*, 771 F.2d 920 (6th Cir. 1985), is distinguishable. That is true. In *Walker*, the prison implemented a blanket ban on group services for inmates in administrative segregation due to security concerns (prison riots) which are not present in Plaintiff's case. Nevertheless, as discussed above, the R&R cited a valid penological interest, which is what *Turner v. Safley*, 482 U.S. 78 (1987) requires.

Plaintiff also objects to the determination that Plaintiff failed to cite any evidence undermining Defendants' contention that the blanket ban served legitimate government purposes. Plaintiff ostensibly contends that punishment is not a legitimate purpose, but the

R&R relied on *Beard v. Banks*, 548 U.S. 521 (2006). Plaintiff cites the dissenting opinion in that case, but obviously the dissenting opinion is not controlling.

### *Turner* analysis

Plaintiff also objects to the determination that he failed to specify the materials that he lacked in order to conduct solitary rituals as an alternative means of exercising his religion. Plaintiff contends that he specified these materials in his complaint, in his deposition, and in an affidavit. But all of these refer to the same materials that he would have needed to conduct a service on his own, as a replacement for the sort of service to which he was denied access. In his deposition, he did not deny that no one prevented him from practicing his religion in other ways in his cell. Rather, he acknowledged his inability to practice in his cell was due, in part, to a personal lack of knowledge about what to do.

### **Summary Judgment**

Finally, Plaintiff contends that there are genuine issues of fact regarding the *Turner* factors, including the availability of alternative means for Plaintiff to practice his religion. But even if there are no alternative means for Plaintiff to practice his religion, the R&R is correct that this factor is not "conclusive," and that the balance of factors supports the reasonableness of the policy. (R&R 11-12.)

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's objections (ECF No. 75) are **DENIED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation (ECF No. 17) is **APPROVED** and **ADOPTED** as the opinion of the Court, except that the Court declines to certify that an appeal would not be in good faith.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (ECF No. 65) is **GRANTED**.

A judgment will enter consistent with this order.


Dated: October 27, 2016              /s/ Robert Holmes Bell
                                     ROBERT HOLMES BELL
                                     UNITED STATES DISTRICT JUDGE